IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DEBRA HOLLINGSWORTH,

    Plaintiff,

v.                                                                                              No. 05-1272 B

HENRY COUNTY MEDICAL CENTER
EMS, INC.,

    Defendant.
_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

INTRODUCTION

This lawsuit has been brought by the Plaintiff, Debra Hollingsworth, against the Defendant, Henry County Medical Center EMS, Inc. ("HCMC"), alleging gender discrimination and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. In a motion filed March 7, 2007, the Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to all claims asserted by the Plaintiff.

STANDARD OF REVIEW

Rule 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988).

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on her pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

The following material facts set out by the Defendant are undisputed by Hollingsworth unless otherwise noted. HCMC is a nonprofit medical center located in Henry County, Tennessee, which provides both in-patient hospital and ambulance services. The Plaintiff was hired in 1998 as a part-time emergency medical technician (an "EMT") by Mike Shankle, director of HCMC's paramedics and EMTs, and worked in that capacity from September 1998 to 1999. In 1999, she was promoted by Shankle to a full-time paramedic position, where she remained until her resignation on September 5, 2004.

On September 4, 2004, a holiday weekend, the Plaintiff was scheduled to work a twelve-hour shift, from 7:00 a.m. until 7:00 p.m. When she arrived at work at 6:45 a.m., Hollingsworth was

advised that she would not be partnered with another female, April Goforth. She informed the shift supervisor, Tim Hester, that she believed what she claims was Shankle's policy of prohibiting women from working together on the same shift[1] was discriminatory, that she was leaving, and that she was "willing to suffer the consequences." She also stated that "if they felt that [she] couldn't do the job as well as a man, then [she] needed to go home." The Plaintiff then left the premises without authorization. According to the Defendant, Hester, who had just completed a 24-hour shift, contacted Shankle to advise him of the situation and that he had no one to cover the shift. Ultimately, Shankle worked the shift himself. Hollingsworth returned to work the following day and met with Shankle, who fired her for abandoning her post and insubordination. The two met again the next day, September 6, 2004, when the Plaintiff asked to be reinstated. Shankle denied her request but permitted her to resign.

Hollingsworth first filed a charge of discrimination with the Tennessee Human Rights Commission (the "Commission") on September 10, 2004 alleging sex discrimination based on her employer's failure to permit her to work on September 4, 2004 with another woman. The charge did not allege a continuing violation. She filed a second charge on October 12, 2004, averring retaliation on the basis of sex and constructive discharge, again arising out of Shankle's refusal to assign her to work with a female. This action was brought on September 22, 2005.

ANALYSIS OF THE PARTIES' CONTENTIONS

I.      Timeliness and Scope of EEOC Claims.

"Title VII specifies with precision the prerequisites that a plaintiff must satisfy before filing suit." Dendinger v. Ohio, 207 F.App'x 521, 525 (6th Cir. 2006) (quoting Nat'l R.R. Passenger Corp.

---

[1] The Defendant has denied the existence of such a policy.

3

v. Morgan, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)) (internal quotation marks omitted). The statute requires that an aggrieved individual file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days "after the alleged unlawful employment practice occurred," if she "initially instituted proceedings with a State or local agency" qualified to provide relief. 42 U.S.C. § 2000e-5(e)(1). Tennessee has a state system of administrative remedies, which the Plaintiff invoked in filing her EEOC charge with the Commission. See El-Zabet v. Nissan N. Am., Inc., 211 F.App'x 460, 463 (6th Cir. 2006). Therefore, the 300-day period applies.

The Defendant first argues that any alleged incidents described in Hollingsworth's September 10, 2004 charge that occurred more than 300 days prior to the filing of the charges are time-barred. In response, the Plaintiff maintains that previous acts should be considered under the continuing violation doctrine, a narrow exception to the limitations rule which "requires the plaintiff to show that the employer had a longstanding and demonstrable policy of discrimination against the class of which the plaintiff is a part." See Wu v. Tyson Foods, Inc., 189 F.App'x 375, 379 (6th Cir. 2006). In order to survive summary judgment, Hollingsworth must "introduce evidence that proves that some form of intentional discrimination against the class of which [she] was a member was the company's standard operating procedure." See id. (citation omitted).

In support of her contentions, the Plaintiff offers the affidavits of four former HCMC employees who stated that it was "common knowledge that [Shankle] had an unwritten policy that two females could not work together as partners in an ambulance." However, an affiant's statement that certain information was "common knowledge" has been found "too conclusory and vague to successfully counter a motion for summary judgment." Stalbosky v. Belew, 205 F.3d 890, 894-95 (6th Cir. 2000). Moreover, there is no indication in any of the affidavits as to when the alleged

4

...
...
...
...

policy was considered common knowledge or when the affiants worked for the Defendant. Accordingly, the affidavits are of little value. The Court finds that the continuing violation does not apply.

The Defendant further asserts that Hollingsworth's allegations with respect to sexually hostile work environment and discharge for protesting a discriminatory practice are outside the scope of her EEOC charges. "Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." Albeita v. TransAm. Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998), reh'g and suggestion for reh'g en banc denied (Dec. 23, 1998). "The judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Tartt v. City of Clarksville, 149 F.App'x 456, 461 (6th Cir. 2005) (quoting Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 380 (6th Cir. 2002)) (internal quotation marks omitted). Thus, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004) (quoting Weigel, 302 F.3d at 380). The rationale is that "charges of discrimination filed with the EEOC often will be prepared by aggrieved laypersons without the assistance of counsel." Id. at 219.

The question is, then, whether Hollingsworth alleged sufficient facts in her EEOC charges to put the EEOC on notice of her claims of hostile work environment and discharge for protest of a discriminatory policy. See id. at 217. The Court finds in reviewing the EEOC charges and the documents attached thereto that the Plaintiff has done so. On the September 10, 2004 charge form, she stated that the Defendant insisted women not work together in order to "degrade" them and "try

5

to put [them] in [their] place." She also averred that she had attempted to talk to Shankle about the alleged policy in the past and he became angry and yelled at her. The Plaintiff reported feeling intimidated by him and that if she "ever brought it up as a discrimination issue, [she] would be sorry." In the Court's opinion, these statements were sufficient to prompt the EEOC to investigate claims of hostile work environment and discharge for protesting a discriminatory practice. See id. at 217. Accordingly, this Court has subject matter jurisdiction to hear Hollingsworth's claims.

II.     Merits of the Plaintiff's Title VII Claims.

     A.     Gender Discrimination Based on Disparate Treatment.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e-2(a)(1). Disparate treatment as posited by the Plaintiff "occurs when an employer treats some employees less favorably than others because of race, religion, sex, or the like." Huguley v. Gen. Motors Corp., 52 F.3d 1364, 1370 (6th Cir. 1995). A plaintiff may prevail by presenting direct evidence of discrimination or by presenting circumstantial evidence, utilizing the evidentiary framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), from which a factfinder could draw an inference of discriminatory motive. See Seay v. Tenn. Valley Auth., 339 F.3d 454, 463 (6th Cir. 2003).

> With respect to direct evidence, the Sixth Circuit has explained as follows:
>
> Where a plaintiff presents direct evidence of discriminatory intent in connection with a challenged employment action, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination. This court has explained that

6

> direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.

Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003), reh'g & suggestion for reh'g en banc denied (Apr. 22, 2003) (internal citations and quotation marks omitted). Thus, upon a showing by a plaintiff of credible direct evidence of discriminatory animus, the employer must "do more than merely 'articulate' its nondiscriminatory reason for its action." Brack v. Shoney's, Inc., 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003), recons. denied, No. 01-CV-2997-DV, 2003 WL 23924996 (W.D. Tenn. Mar. 27, 2003).

In order to establish a prima facie case of discrimination where direct evidence is not available, a plaintiff must show, under the well-settled McDonnell Douglas/Burdine paradigm, that "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated male and/or nonminority employees for the same or similar conduct." McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd., 440 F.3d 320, 332 (6th Cir. 2006). If the plaintiff "sustains her burden of establishing a prima facie case, the burden then shifts to [the employer] to articulate a legitimate, nondiscriminatory reason for [its actions]. If [the employer] successfully carries its burden, the burden returns to [the plaintiff] to produce evidence from which a jury could find that [the employer's] stated reason is merely pretextual." Id. Pretext may be demonstrated by showing that the articulated reasons "(1) had no basis in fact, (2) did not actually motivate the adverse action taken against her, or (3) were insufficient to motivate the adverse action taken against her." Id. (citation omitted).

There appears to be no dispute that Hollingsworth was a member of a protected class, that she was terminated,[2] or that she was qualified for the position she held. She has, however, failed to

---

[2]The Plaintiff also characterizes as an adverse action Shankle's alleged policy prohibiting women to work together on the same shift. Not every employment action disliked by an employee is sufficient to satisfy the adverse action element of the discrimination claim. Instead, an adverse action must be a *materially adverse* change in the terms or conditions of a plaintiff's employment caused by the employer's actions. Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir. 2000). Thus, in order to be actionable, the adverse action must be "sufficiently severe." See Halloran v. Minn. Old Nw. Agents Ltd. P'ship, 58 F. Supp. 2d 831, 841 (W.D. Tenn. 1999).

> A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Bowman, 220 F.3d at 461-62.

De minimis actions are not materially adverse and are not actionable. Id. at 462. In Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996), the Sixth Circuit, in discussing this issue, noted that reassignment, a requirement that an employee sign an agreement with the employer as a condition of promotion, a negative public perception concerning a transfer or a particular job, a transfer to a position with different responsibilities, semantic changes in title, and the bruising of an ego did not, without more, rise to the level of "materially adverse changes" in the terms of employment. Kocsis, 97 F.3d at 885-87. Courts in this circuit have also found that a reprimand or an involuntary transfer, absent loss of pay or benefits, or change in duties, does not constitute a materially adverse change in employment. See Akers v. Alvey, 338 F.3d 491, 498 (6th Cir. 2003); Reid v. Madison County, Tenn., No. 98-5312, 1999 WL 196560, at *2 (6th Cir. Apr. 1, 1999); Halloran, 58 F. Supp. 2d at 841. "An employee's subjective impressions . . . are not relevant." Policastro v. Nw. Airlines, 297 F.3d 535, 539 (6th Cir. 2002), reh'g & suggestion for reh'g en banc denied (Oct. 2, 2002). Similarly, "an employee's subjective view about an employment action, without further evidentiary support, may not by itself establish that the decision" was discriminatory. Kinamore v. EPB Elec. Util., No. 1:00-CV-416, 2002 WL 32059025, at *6 (E.D. Tenn. Apr. 11, 2002), aff'd, 92 F.App'x 197 (6th Cir. 2004). As not being able to work her shift with another woman is not "adverse" as the term has been defined in this Circuit, it cannot establish the basis for a discrimination claim based on disparate treatment. See Vredevelt v. GEO Group, Inc., 145 F.App'x 122, 128-29 (6th Cir. 2005) (a plaintiff's subjective impressions about the desirability of one position over another is not determinative of an adverse employment action).

8

establish the fourth prong of the prima facie case. Specifically, the Plaintiff has made no showing that similarly-situated male employees who were deemed insubordinate and who abandoned their posts were not terminated. In support of her position, she refers in her deposition to three male employees who she claims are similarly-situated. According to her testimony, Patrick Petronico was a paramedic who, when an out-of-town transfer was not ready to go, said he could not stay, clocked out and went home. Richard Sinclair is alleged to have called in thirty minutes prior to his shift, rather than the required ninety minutes, to inform the employer that he was in Florida and had forgotten he had to work, which required another employee to fill in for a portion of his shift. Finally, Hollingsworth reported that Matthew McClure refused to respond to a 911 call that came from near another jurisdiction, which he claimed should have responded to the call. None were fired. (Dep. of Debra Hollingsworth ("Hollingsworth Dep.") at 94-96)

> [I]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated *in all respects*. . . . [T]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated"; rather the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the *relevant* aspects." . . . [T]his Court has asserted that in applying the standard that plaintiff must show that [she] is treated differently than similarly situated employees from outside the class courts should not demand exact correlation, but should instead seek relevant similarity.

Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002) (internal citations and quotation marks omitted) (emphasis in original). The "comparables" cited are not, in the Court's view, similarly situated *in all respects* to the Plaintiff. At worst, the males identified by Hollingsworth failed to give adequate notice they would not be coming in to work, left the premises after arriving for their shift, or were insubordinate. There is no evidence they walked off the job on a holiday weekend leaving

9

a co-worker just coming off a 24-hour shift to find a replacement for them after vocally disagreeing with an alleged employer policy and declaring their willingness to "suffer the consequences." Similarly, there is nothing to suggest they were not at their posts *and* were insubordinate. The difference is essentially one of degree and combination, of which the Court is permitted to take note. See Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 562 (6th Cir. 2004), reh'g en banc denied (Feb. 1, 2005) ("although the co-workers to which [plaintiff] compares himself may have similarities in some respects, none was similar in the way that is fundamental to this case: no employee violated the key policy *and* engaged in threatening and violent behavior. Because none of the employees cited allegedly engaged in the range of activities for which [plaintiff] was disciplined, no employee is similarly situated"); Clayton, 281 F.3d at 610-12 (even though white employees engaged in the same negligent conduct, they were not similarly situated with black plaintiff whose conduct was "qualitatively more serious"); Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998), reh'g & suggestion for reh'g en banc denied (Oct. 19, 1998) ("to be deemed 'similarly-situated' in the disciplinary context, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"); Crawford v. Muvico Theaters, Inc., No. 04-2720 B, 2006 WL 522391, at *2-3, 8 (W.D. Tenn. Mar. 2, 2006) (male co-workers who took breaks exceeding the fifteen or thirty minute break period by a few minutes or had their shirts untucked were not similarly-situated with plaintiff who was away from her post for one hour and seventeen minutes *and* arrived at work with her shirt untucked); Bigham v. Health Express, Inc., 346 F. Supp. 2d 942, 946 (E.D. Mich. 2004) ("The Court finds no evidence that a white

employee had the same quantity or quality of deficiencies and was treated any better. While there may have been other employees who made personal telephone calls, there is no evidence of another employee who had the same combination or extent of deficiencies and was treated differently"). Thus, as Hollingsworth has failed to establish the fourth prong of the prima facie case for discrimination under Title VII, summary judgment is granted as to the disparate treatment claim.[3]

    B.    <u>Retaliation.</u>

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . .because [she] has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation under the so-called "opposition clause," a plaintiff must

> show: (1) that she engaged in protected activity; (2) that defendant knew of this exercise of her protected rights; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and adverse employment action. If a plaintiff establishes a prima facie case of retaliation, the defendant may rebut the presumption of retaliation by asserting a legitimate non-discriminatory reason for its actions. The plaintiff must then show by a preponderance of the evidence that the employer's proffered reason for the employment action is pretextual. The plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant['s] explanation and infer that the defendant[] intentionally discriminated against her. The plaintiff must submit evidence demonstrating that the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action.

<u>Balmer v. HCA, Inc.</u>, 423 F.3d 606, 613-14 (6th Cir. 2005) (internal citations and quotation marks omitted).

"Under Title VII, an employee is protected against employer retaliation for opposing any

---

[3] In granting summary judgment on the disparate treatment claim, the Court further notes the application of the "same actor inference," which permits the inference of a lack of discrimination from the fact that the same person both hired and fired the plaintiff. <u>See</u> <u>Buhrmaster v. Overnite Transp. Co.</u>, 61 F.3d 461, 463-64 (6th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 1078, 116 S. Ct. 785, 133 L. Ed. 2d 736 (1996).

11

practice that the employee reasonably believes to be a violation" of the statute. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir.), cert. denied, 531 U.S. 1052, 121 S. Ct. 657, 148 L. Ed. 2d 560 (2000). As was noted by the court in Johnson, the EEOC "has identified a number of examples of 'opposing' conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer -- e.g., former employers, union, and co-workers." Id. at 579 (citing EEOC Compliance Manual, (CCH) ¶ 8006).

In her deposition, Hollingsworth recalled that during the September 7, 2004 meeting, she told Shankle she should have called him at the time of the September 4 incident. She testified that "[h]e said I was still terminated. It didn't make any difference; that when I left I made him look bad because I was making a statement and that got up the hill and made him look bad, which is up the hill, the hospital board heard about it." The Plaintiff further stated as follows:

> I just told him, you know, I was sorry, but I told him that I was sorry that I left, but I said that I did not leave my shift uncovered. That I thought the punishment was way too severe because other people had done things much worse and were never punished and that, you know, I had come in every time I was called, worked, you know, more overtime than anybody there, come in on vacation, holidays, worked sick, never missed a day, never come in late, and why was my punishment so severe to be terminated instead of, you know, something less severe.
>
> \*   \*   \*
>
> That's when he told me that I made him look bad, that I was being terminated and was to never work in Henry County again.

(Hollingsworth Dep. at 89-90) Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that the finder of fact could infer from Shankle's alleged statement that Hollingsworth was fired because her walking off the job in protest brought his alleged unlawful activity to the

12

attention of his superiors on the hospital board. Thus, for purposes of summary judgment, the Plaintiff has established a prima facie case of retaliation and that HCMC's stated nondiscriminatory reasons for its action -- abandoning of her post and insubordination -- were grounded in pretext. The motion for summary judgment as to the retaliation claim is DENIED.

    C.    <u>Hostile Work Environment.</u>

> In order to establish a prima facie case of hostile work environment . . ., a plaintiff must show: 1) that [she] is a member of a protected class; 2) that [she] was subjected to unwelcome . . . harassment; 3) that the harassment was based on [gender]; 4) that the harassment had the effect of unreasonably interfering with [her] work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. In determining whether there was a hostile or abusive workplace environment, [the court is to] look to the totality of the circumstances. Specifically, [the court is instructed to] consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. . . . Finally, the work environment must be both objectively and subjectively offensive.

<u>Newman v. Fed. Express Corp.</u>, 266 F.3d 401, 405 (6th Cir. 2001) (internal citations and quotation marks omitted). That is, "[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." <u>Richards v. Dep't of Army</u>, No. 05-1091, 2007 WL 579549, at *4 (6th Cir. Feb. 15, 2007) (quoting <u>Black v. Zaring Homes, Inc.</u>, 104 F.3d 822, 826 (6th Cir. 1997)). The alleged conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Clark v. United Parcel Serv., Inc.</u>, 400 F.3d 341, 351 (6th Cir. 2005), <u>reh'g en banc denied</u> (Jun. 20, 2005) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

In support of this claim, the Plaintiff points to Shankle's policy and her protests with regard to the policy; his comments that he could pull his hair out every time he heard the word

"discrimination," that he didn't "think women could lift as much as men," and that he thought he "didn't want women to work together because the patient might get violent"; and his repeated resistance to permitting her to partner with a female. Hollingsworth also claims that Hester and Danny Tucker made comments to the effect that "men were stronger, smarter, better" than women and hinted at "stereotypes that the women's place is in the kitchen and bedroom only."

"[B]efore inquiring as to whether the degree of 'harassment' was sufficient to violate Title VII, it is important to determine whether there was any discriminatory 'harassment' in the first place. . . . The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Schramm v. Slater, 105 F.App'x 34, 39 (6th Cir. 2004), reh'g en banc denied (Oct. 28,. 2004) (citations omitted). In this case, the alleged actions and statements of Shankle, which the Court must take as true on a motion for summary judgment, do not rise to the level of harassment. Hollingsworth has failed to allege that Shankle's opinions in any way altered the conditions of her employment. Indeed, it is undisputed that, between 1998 and 2004, Shankle partnered the Plaintiff with another woman on 67 occasions and that she was partnered with Goforth on August 3, 2004, approximately thirty days prior to her termination and with Tammy Hinson within two weeks of her discharge. Hollingsworth's claims as to Hester and Tucker fare no better. Even though their alleged were improper, "Title VII was not meant to create a 'general civility code,' and the 'sporadic use of abusive language, gender-related jokes, and occasional teasing' are not sufficient to establish liability." Clark, 400 F.3d at 352 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). Accordingly, summary judgment is GRANTED with respect to the Plaintiff's hostile work environment claim.

## CONCLUSION

For the reasons set forth herein, the motion for summary judgment is DENIED as to the Plaintiff's retaliation claim and is GRANTED as to the remainder.

IT IS SO ORDERED this 12th day of June, 2007.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE